**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DEREK DA PONTE, Individually and On Behalf of All Others Similarly Situated,<br><br>         Plaintiff,<br><br>   v.<br><br>AKARI THERAPEUTICS, PLC, GUR ROSHWALB, and DOV ELEFANT,<br><br>         Defendants. | Case No.:<br><br><br>**CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS**<br><br><br>**JURY TRIAL DEMANDED** |

Plaintiff Derek Da Ponte ("Plaintiff"), by and through his attorneys, alleges the following upon information and belief, except as to those allegations concerning Plaintiff, which are alleged upon personal knowledge. Plaintiff's information and belief is based upon, among other things, his counsel's investigation, which includes without limitation: (a) review and analysis of regulatory filings made by Akari Therapeutics, Plc ("Akari" or the "Company"), with the United States ("U.S.") Securities and Exchange Commission ("SEC"); (b) review and analysis of press releases and media reports issued by and disseminated by Akari; and (c) review of other publicly available information concerning Akari.

## NATURE OF THE ACTION AND OVERVIEW

1.      This is a class action on behalf of persons and entities that acquired Akari's securities between March 30, 2017, and May 11, 2017, inclusive (the "Class Period"), against the Defendants,[1] seeking to pursue remedies under the Securities Exchange Act of 1934 (the "Exchange Act").

2.      Akari is purportedly a clinical-stage biopharmaceutical company focused on developing inhibitors of acute and chronic inflammation, specifically the complement system, the eicosanoid system, and the bioamine system for the treatment of rare and orphan diseases.

3.      On April 27, 2017, the Company disclosed that Edison Investment Research Ltd. withdrew its report issued on April 26, 2017, titled  "Akari's Coversin matches Soliris in Phase II" (the "Edison Report") because it contains material inaccuracies related to Akari's interim analysis of its Phase 2 PNH trial of Coversin.  The Company further stated that investors should not rely upon any information contained in the Edison Report.

4.      On May 11, 2017, the Company further disclosed that its Board of Directors established an *ad hoc* special committee of the Board to review the involvement, if any, of Company personnel with the Edison Report.  The Company also disclosed that Defendant Gur Roshwalb, the Company's Chief Executive Officer ("CEO"), was placed on administrative leave.

5.      On this news, the Company's American Depository Receipts ("ADR" or "share")

---

[1] "Defendants" refers to Akari Therapeutics, Plc, Gur Roshwalb, and Dov Elefant, collectively.

price fell more than 20% during intraday trading on May 12, 2017.

6.       Throughout the Class Period, Defendants made materially false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects. Specifically, Defendants failed to disclose: (1) that the Company's CEO, and possibly other executives, were involved in publishing false information about the Company, including false information about the Phase 2 PNH trial of Coversin; (2) that the Company lacked adequate checks and protections to prevent such behavior; and (3) that, as a result of the foregoing, Defendants' statements about Akari's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

7.       As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

**JURISDICTION AND VENUE**

8.       The claims asserted herein arise under Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

9.       This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act (15 U.S.C. § 78aa).

10.      Venue is proper in this Judicial District pursuant to 28 U.S.C. § 1391(b) and Section 27 of the Exchange Act (15 U.S.C. § 78aa(c)).  Substantial acts in furtherance of the alleged fraud or the effects of the fraud have occurred in this Judicial District.  Many of the acts charged herein, including the dissemination of materially false and/or misleading information, occurred in substantial part in this Judicial District.  In addition, the Company's shares trade in this judicial district.

11.      In connection with the acts, transactions, and conduct alleged herein, Defendants directly and indirectly used the means and instrumentalities of interstate commerce, including the United States mail, interstate telephone communications, and the facilities of a national securities exchange.

## **PARTIES**

12.     Plaintiff Derek Da Ponte, as set forth in the accompanying certification, incorporated by reference herein, purchased Akari securities during the Class Period, and suffered damages as a result of the federal securities law violations and false and/or misleading statements and/or material omissions alleged herein.

13.     Defendant Akari Therapeutics, Plc is incorporated under The Laws of England and Wale and its headquarters are in London in the United Kingdom.  Akari's ADRs trade on the NASDAQ Stock Market ("NASDAQ") under the symbol "AKTX."

14.     Defendant Gur Roshwalb ("Roshwalb") was the CEO of Akari at all relevant times.

15.     Defendant Dov Elefant ("Elefant") was the Chief Financial officer ("CFO") of Akari at all relevant times.

16.     Defendants Roshwalb and Elefant (collectively the "Individual Defendants"), because of their positions with the Company, possessed the power and authority to control the contents of Akari's reports to the SEC, press releases and presentations to securities analysts, money and portfolio managers and institutional investors, *i.e.*, the market.  The Individual Defendants were provided with copies of the Company's reports and press releases alleged herein to be misleading prior to, or shortly after, their issuance and had the ability and opportunity to prevent their issuance or cause them to be corrected.  Because of their positions and access to material non-public information available to them, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to, and were being concealed from, the public, and that the positive representations which were being made were then materially false and/or misleading.  The Individual Defendants are liable for the false statements pleaded herein.

## SUBSTANTIVE ALLEGATIONS

### Background

17.     Akari is purportedly a clinical-stage biopharmaceutical company focused on developing inhibitors of acute and chronic inflammation, specifically the complement system, the eicosanoid system, and the bioamine system for the treatment of rare and orphan diseases.

### Materially False and Misleading
### Statements Issued During the Class Period

18.     The Class Period begins on March 30, 2017.  On that day the Company issued a press release entitled "Akari Therapeutics Announces FDA Fast Track Designation For Coversin."  Therein, the Company, in relevant part, stated:

NEW YORK and LONDON, March 30, 2017 (GLOBE NEWSWIRE) -- Akari Therapeutics (NASDAQ:AKTX), an emerging growth, clinical-stage biopharmaceutical company, announced today that the US Food and Drug Administration (FDA) has granted Fast Track designation for Coversin™ for treatment of paroxysmal nocturnal hemoglobinuria (PNH) in patients who have polymorphisms conferring eculizumab resistance. Coversin™ is a second-generation complement inhibitor that acts on complement component-C5, preventing the release of C5a and the formation of C5b–9 (also known as the membrane attack complex or MAC), and independently also inhibits LTB4 activity.

"We are very proud of the continued advancement of our Coversin program for the treatment of PNH in patients with or without polymorphisms," said Dr. Gur Roshwalb, Chief Executive Officer of Akari Therapeutics. "The FDA fast track designation recognizes the unmet need in patients with PNH who cannot be treated with the current standard of care due to polymorphisms."

Akari is evaluating Coversin in two Phase 2 clinical trials. The first Phase 2 trial is evaluating Coversin™ in patients with PNH who have never received a complement blocking therapy. Interim results from this ongoing Phase 2 trial will be presented at the recently announced Research and Development Day to be held on April 24, 2017 in New York. The second Phase 2 trial is evaluating Coversin in patients with PNH and C5 polymorphisms resistant to eculizumab. One patient has been enrolled in this trial and has demonstrated significant LDH reduction and complete complement blockade with self-administered subcutaneous Coversin™ for over one year.

19.     On April 24, 2017, the Company issued a press release entitled "Akari Therapeutics Demonstrates Positive Response with Coversin in Ongoing Phase 2 PNH Trial and

in Additional Clinical Targets." Therein, the Company, in relevant part, stated:

> NEW YORK and LONDON, April 24, 2017 (GLOBE NEWSWIRE) -- Akari Therapeutics (NASDAQ:AKTX), an emerging growth, clinical-stage biopharmaceutical company, announced that it will present data from an interim analysis of its ongoing Phase 2 trial of Coversin in paroxysmal nocturnal hemoglobinuria (PNH), as well as preclinical data for additional indications and other opportunities, at today's Research and Development Day.

> **Positive Interim Phase 2 data in PNH**

> In this 90 day, open label Phase 2 trial conducted at five centers in the EU, five patients with PNH who had not received prior anti-complement therapy were enrolled and treated with Coversin self-administered subcutaneous injections twice a day for approximately the first month and then switched to once daily injections. The primary endpoint in this trial is reduction in serum LDH to ≤1.8 X ULN or 500 I U/L whichever is the lower from day 1 (pre-dose) to day 28. Secondary endpoints are LDH at days 60 and 90, hemoglobin, CH50, quality of life, and transfusion independence. The objectives of our Phase 2 study are to validate the safety and efficacy of Coversin, confirm convenience of our dosing regimen, and study dose ranging to identify the correct treatment dose in advance of Phase 3.

> The 4 patients who remain on Coversin are characterized, to date, by:

> - Symptom free
>
> - LDH reductions 1.3, 1.4, 1.5 and 1.8X ULN
>
> - No transfusions (2 of the 4 patients received transfusions in the 3 months prior to the study)
>
> - CH50 below level of quantification (from day 1)
>
> - Once daily subcutaneous self-administration
>
> - No neutralizing antibodies
>
> - No serious adverse events (SAEs)

> In this dose ranging Phase 2 study, the protocol allowed for patients to be updosed from the 30mg starting dose. Of the 4 patients continuing on Coversin: the first patient's LDH went from 2.4X ULN at baseline to 2.1X ULN on the starting dose, was updosed to 45 mg and achieved a reduction to 1.3X ULN on day 28 and remains on 45mg once daily injections; the second patient with an LDH of 7.5X ULN at baseline, achieved a reduction to 1.4X ULN on day 28 with the starting dose, and remains on 30mg once daily injections; the third patient's LDH went from 3.3X ULN at baseline to 2.4X ULN on the starting dose, was updosed to 45

mg  and achieved a reduction to 1.5X ULN on day 60 and remains on 45mg once daily injections; and the fourth patient who just reached the 6 week mark for this interim analysis achieved an LDH reduction from 5.6 X ULN at baseline to 1.8X ULN on day 40 on the starting dose, and was updosed to 45mg on day 48 and continues on once daily injections. All 4 patients achieved on day 1 and throughout the trial a CH50 below the lower limit of quantification ("<LLQ").

A fifth patient with an LDH of 3.7 X ULN at baseline achieved the primary endpoint at day 14, but was withdrawn from the trial at day 43 due to a suspected co-morbidity  unrelated to treatment, which would have excluded the patient from the trial protocol.  While on Coversin, the patient met the primary endpoint (day 14), and achieved and maintained a CH50 <LLQ (day 1) but clinical response fluctuated and did not stabilize.  After withdrawal, the patient switched to eculizumab. On eculizumab, LDH decreased to below 1.5X ULN and the patient experienced other clinical complications.

As reported previously, an eculizumab-resistant PNH patient had been under treatment with subcutaneous Coversin for over 14 months under an approved clinical protocol. The patient continues to self-administer Coversin and continues to demonstrate complete complement inhibition without any change in dose.  The patient's most recent reported LDH was below 1.3 X ULN. Further, there have been no signs of neutralizing antibodies.

All patients are comfortable with self-dosing and by the end of May, we plan to have the four continuing patients from this Phase 2 and the one patient from the eculizumab resistant protocol on long term treatment in our long term open label safety trial. Akari is planning to initiate its Phase 3 program in PNH in the fourth quarter of 2017 and anticipates initial Phase 3 data 1Q2019.

20.    On April 26, 2017, Edison Investment Research Ltd. issued the Edison Report, which contained false information regarding the Phase 2 PNH trial of Coversin.

21.    On April 27, 2017, the Company disclosed that Edison Investment Research Ltd. withdrew the Edison Report because it contains material inaccuracies related to Akari's interim analysis of its Phase 2 PNH trial of Coversin.  The Company further stated that investors should not rely upon any information contained in the Edison Report.  In whole, the Company stated:

Edison Investment Research Ltd. has withdrawn its report issued yesterday titled  "Akari's Coversin matches Soliris in Phase II" (the "Edison Report") because it contains material inaccuracies, including without limitation, with respect to Akari's recently announced interim analysis of its ongoing Phase 2 PNH trial of Coversin. Investors should not rely upon any information contained in the Edison Report and instead should refer to Akari's press release issued on April 24, 2017 that discusses the interim analysis of its ongoing Phase 2 PNH trial and other matters.

22.    The above statements identified in ¶¶18-21 were materially false and/or misleading, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants failed to disclose: (1) that the Company's CEO, and possibly other executives, were involved in publishing false information about the Company, including false information about the Phase 2 PNH trial of Coversin; (2) that the Company lacked adequate checks and protections to prevent such behavior; and (3) that, as a result of the foregoing, Defendants' statements about Akari's business, operations, and prospects, were false and misleading and/or lacked a reasonable basis.

### Disclosures at the End of the Class Period

23.    On May 11, 2017, the Company further disclosed that its Board of Directors established an *ad hoc* special committee of the Board to review the involvement, if any, of Company personnel with the Edison Report.  The Company also disclosed that Defendant Gur Roshwalb, the Company's CEO, was placed on administrative leave.  In whole, the Company stated:

> As previously reported by Akari Therapeutics, Plc (the "Company"), on April 27, 2017, the Company issued a press release stating that Edison Investment Research Ltd. has withdrawn its report issued April 26, 2017 titled "Akari's Coversin matches Soliris in Phase II" (the "Edison Report") because it contains material inaccuracies, including without limitation, with respect to Akari's recently announced interim analysis of its ongoing Phase 2 PNH trial of Coversin. Investors were cautioned not to rely upon any information contained in the Edison Report and instead were directed to Akari's press release issued on April 24, 2017 that discusses the interim analysis of its ongoing Phase 2 PNH trial and other matters. The Company's Board of Directors has established an *ad hoc* special committee of the Board to review the involvement, if any, of Company personnel with the Edison Report. While that review is pending, Dr. Gur Roshwalb, the Company's Chief Executive Officer, has been placed on administrative leave and Dr. Ray Prudo in his role as Executive Chairman is temporarily assuming Dr. Roshwalb's duties in his absence.

24.    On this news, the Company's ADR price fell more than 20% during intraday trading on May 12, 2017.

### CLASS ACTION ALLEGATIONS

25.    Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a class, consisting of all persons and entities that

acquired Akari's securities between March 30, 2017, and May 11, 2017, inclusive, and who were damaged thereby (the "Class"). Excluded from the Class are Defendants, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns, and any entity in which Defendants have or had a controlling interest.

26.     The members of the Class are so numerous that joinder of all members is impracticable. Throughout the Class Period, Akari's shares actively traded on the NASDAQ. While the exact number of Class members is unknown to Plaintiff at this time and can only be ascertained through appropriate discovery, Plaintiff believes that there are at least hundreds or thousands of members in the proposed Class. Millions of Akari shares were traded publicly during the Class Period on the NASDAQ. As of December 31, 2016, Akari had 1,177,693,383 ordinary shares outstanding. Record owners and other members of the Class may be identified from records maintained by Akari or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

27.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

28.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.

29.     Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class. Among the questions of law and fact common to the Class are:

(a)     whether the federal securities laws were violated by Defendants' acts as alleged herein;

(b)     whether statements made by Defendants to the investing public during the Class Period omitted and/or misrepresented material facts about the business, operations, and prospects of Akari; and

(c)    to what extent the members of the Class have sustained damages and the proper measure of damages.

30.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation makes it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

## UNDISCLOSED ADVERSE FACTS

31.    The market for Akari's securities was open, well-developed and efficient at all relevant times.  As a result of these materially false and/or misleading statements, and/or failures to disclose, Akari's securities traded at artificially inflated prices during the Class Period.  Plaintiff and other members of the Class purchased or otherwise acquired Akari's securities relying upon the integrity of the market price of the Company's securities and market information relating to Akari, and have been damaged thereby.

32.    During the Class Period, Defendants materially misled the investing public, thereby inflating the price of Akari's securities, by publicly issuing false and/or misleading statements and/or omitting to disclose material facts necessary to make Defendants' statements, as set forth herein, not false and/or misleading.  The statements and omissions were materially false and/or misleading because they failed to disclose material adverse information and/or misrepresented the truth about Akari's business, operations, and prospects as alleged herein.

33.    At all relevant times, the material misrepresentations and omissions particularized in this Complaint directly or proximately caused or were a substantial contributing cause of the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Akari's financial well-being and prospects.  These material misstatements and/or omissions had the cause and effect of creating in the market an unrealistically positive assessment of the Company and its financial well-being and prospects,

thus causing the Company's securities to be overvalued and artificially inflated at all relevant times. Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at artificially inflated prices, thus causing the damages complained of herein when the truth was revealed.

## LOSS CAUSATION

34.     Defendants' wrongful conduct, as alleged herein, directly and proximately caused the economic loss suffered by Plaintiff and the Class.

35.     During the Class Period, Plaintiff and the Class purchased Akari's securities at artificially inflated prices and were damaged thereby. The price of the Company's securities significantly declined when the misrepresentations made to the market, and/or the information alleged herein to have been concealed from the market, and/or the effects thereof, were revealed, causing investors' losses.

## SCIENTER ALLEGATIONS

36.     As alleged herein, Defendants acted with scienter since Defendants knew that the public documents and statements issued or disseminated in the name of the Company were materially false and/or misleading; knew that such statements or documents would be issued or disseminated to the investing public; and knowingly and substantially participated or acquiesced in the issuance or dissemination of such statements or documents as primary violations of the federal securities laws. As set forth elsewhere herein in detail, the Individual Defendants, by virtue of their receipt of information reflecting the true facts regarding Akari, their control over, and/or receipt and/or modification of Akari's allegedly materially misleading misstatements and/or their associations with the Company which made them privy to confidential proprietary information concerning Akari, participated in the fraudulent scheme alleged herein.

## APPLICABILITY OF PRESUMPTION OF RELIANCE
## (FRAUD-ON-THE-MARKET DOCTRINE)

37.     The market for Akari's securities was open, well-developed and efficient at all relevant times. As a result of the materially false and/or misleading statements and/or failures to

disclose, Akari's securities traded at artificially inflated prices during the Class Period.  On April 21, 2017, the Company's share price closed at a Class Period high of $20.50.  Plaintiff and other members of the Class purchased or otherwise acquired the Company's securities relying upon the integrity of the market price of Akari's securities and market information relating to Akari, and have been damaged thereby.

38.    During the Class Period, the artificial inflation of Akari's shares were caused by the material misrepresentations and/or omissions particularized in this Complaint causing the damages sustained by Plaintiff and other members of the Class.  As described herein, during the Class Period, Defendants made or caused to be made a series of materially false and/or misleading statements about Akari's business, prospects, and operations.   These material misstatements and/or omissions created an unrealistically positive assessment of Akari and its business, operations, and prospects, thus causing the price of the Company's securities to be artificially inflated at all relevant times, and when disclosed, negatively affected the value of the Company's shares.  Defendants' materially false and/or misleading statements during the Class Period resulted in Plaintiff and other members of the Class purchasing the Company's securities at such artificially inflated prices, and each of them has been damaged as a result.

39.    At all relevant times, the market for Akari's securities was an efficient market for the following reasons, among others:

(a)    Akari ADRs met the requirements for listing, and was listed and actively traded on the NASDAQ, a highly efficient and automated market;

(b)    As a regulated issuer, Akari filed periodic public reports with the SEC and/or the NASDAQ;

(c)    Akari regularly communicated with public investors via established market communication mechanisms, including through regular dissemination of press releases on the national circuits of major newswire services and through other wide-ranging public disclosures, such as communications with the financial press and other similar reporting services; and/or

(d)    Akari was followed by securities analysts employed by brokerage firms who wrote reports about the Company, and these reports were distributed to the sales force and

certain customers of their respective brokerage firms.  Each of these reports was publicly available and entered the public marketplace.

40.     As a result of the foregoing, the market for Akari's securities promptly digested current information regarding Akari from all publicly available sources and reflected such information in Akari's share price. Under these circumstances, all purchasers of Akari's securities during the Class Period suffered similar injury through their purchase of Akari's securities at artificially inflated prices and a presumption of reliance applies.

41.     A Class-wide presumption of reliance is also appropriate in this action under the Supreme Court's holding in *Affiliated Ute Citizens of Utah v. United States*, 406 U.S. 128 (1972), because the Class's claims are, in large part, grounded on Defendants' material misstatements and/or omissions.  Because this action involves Defendants' failure to disclose material adverse information regarding the Company's business operations and financial prospects—information that Defendants were obligated to disclose—positive proof of reliance is not a prerequisite to recovery.  All that is necessary is that the facts withheld be material in the sense that a reasonable investor might have considered them important in making investment decisions.  Given the importance of the Class Period material misstatements and omissions set forth above, that requirement is satisfied here.

## NO SAFE HARBOR

42.     The statutory safe harbor provided for forward-looking statements under certain circumstances does not apply to any of the allegedly false statements pleaded in this Complaint. The statements alleged to be false and misleading herein all relate to then-existing facts and conditions. In addition, to the extent certain of the statements alleged to be false may be characterized as forward looking, they were not identified as "forward-looking statements" when made and there were no meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the purportedly forward-looking statements. In the alternative, to the extent that the statutory safe harbor is determined to apply to any forward-looking statements pleaded herein, Defendants are liable for those false forward-looking statements because at the time each of those forward-looking statements was made, the

speaker had actual knowledge that the forward-looking statement was materially false or misleading, and/or the forward-looking statement was authorized or approved by an executive officer of Akari who knew that the statement was false when made.

**FIRST CLAIM**
**Violation of Section 10(b) of The Exchange Act and**
**Rule 10b-5 Promulgated Thereunder**
**Against All Defendants**

43.     Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

44.     During the Class Period, Defendants carried out a plan, scheme and course of conduct which was intended to and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; and (ii) cause Plaintiff and other members of the Class to purchase Akari's securities at artificially inflated prices.   In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each defendant, took the actions set forth herein.

45.     Defendants (i) employed devices, schemes, and artifices to defraud; (ii) made untrue statements of material fact and/or omitted to state material facts necessary to make the statements not misleading; and (iii) engaged in acts, practices, and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities in an effort to maintain artificially high market prices for Akari's securities in violation of Section 10(b) of the Exchange Act and Rule 10b-5.   All Defendants are sued either as primary participants in the wrongful and illegal conduct charged herein or as controlling persons as alleged below.

46.     Defendants, individually and in concert, directly and indirectly, by the use, means or instrumentalities of interstate commerce and/or of the mails, engaged and participated in a continuous course of conduct to conceal adverse material information about Akari's financial well-being and prospects, as specified herein.

47.     Defendants employed devices, schemes and artifices to defraud, while in possession of material adverse non-public information and engaged in acts, practices, and a course of conduct as alleged herein in an effort to assure investors of Akari's value and

performance and continued substantial growth, which included the making of, or the participation in the making of, untrue statements of material facts and/or omitting to state material facts necessary in order to make the statements made about Akari and its business operations and future prospects in light of the circumstances under which they were made, not misleading, as set forth more particularly herein, and engaged in transactions, practices and a course of business which operated as a fraud and deceit upon the purchasers of the Company's securities during the Class Period.

48.     Each of the Individual Defendants' primary liability and controlling person liability arises from the following facts: (i) the Individual Defendants were high-level executives and/or directors at the Company during the Class Period and members of the Company's management team or had control thereof; (ii) each of these defendants, by virtue of their responsibilities and activities as a senior officer and/or director of the Company, was privy to and participated in the creation, development and reporting of the Company's internal budgets, plans, projections and/or reports; (iii) each of these defendants enjoyed significant personal contact and familiarity with the other defendants and was advised of, and had access to, other members of the Company's management team, internal reports and other data and information about the Company's finances, operations, and sales at all relevant times; and (iv) each of these defendants was aware of the Company's dissemination of information to the investing public which they knew and/or recklessly disregarded was materially false and misleading.

49.     Defendants had actual knowledge of the misrepresentations and/or omissions of material facts set forth herein, or acted with reckless disregard for the truth in that they failed to ascertain and to disclose such facts, even though such facts were available to them. Such defendants' material misrepresentations and/or omissions were done knowingly or recklessly and for the purpose and effect of concealing Akari's financial well-being and prospects from the investing public and supporting the artificially inflated price of its securities. As demonstrated by Defendants' overstatements and/or misstatements of the Company's business, operations, financial well-being, and prospects throughout the Class Period, Defendants, if they did not have actual knowledge of the misrepresentations and/or omissions alleged, were reckless in failing to

obtain such knowledge by deliberately refraining from taking those steps necessary to discover whether those statements were false or misleading.

50.    As a result of the dissemination of the materially false and/or misleading information and/or failure to disclose material facts, as set forth above, the market price of Akari's securities was artificially inflated during the Class Period.  In ignorance of the fact that market prices of the Company's securities were artificially inflated, and relying directly or indirectly on the false and misleading statements made by Defendants, or upon the integrity of the market in which the securities trades, and/or in the absence of material adverse information that was known to or recklessly disregarded by Defendants, but not disclosed in public statements by Defendants during the Class Period, Plaintiff and the other members of the Class acquired Akari's securities during the Class Period at artificially high prices and were damaged thereby.

51.    At the time of said misrepresentations and/or omissions, Plaintiff and other members of the Class were ignorant of their falsity, and believed them to be true.  Had Plaintiff and the other members of the Class and the marketplace known the truth regarding the problems that Akari was experiencing, which were not disclosed by Defendants, Plaintiff and other members of the Class would not have purchased or otherwise acquired their Akari securities, or, if they had acquired such securities during the Class Period, they would not have done so at the artificially inflated prices which they paid.

52.    By virtue of the foregoing, Defendants violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

53.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases and sales of the Company's securities during the Class Period.

**SECOND CLAIM**
**Violation of Section 20(a) of The Exchange Act**
**Against the Individual Defendants**

54.    Plaintiff repeats and realleges each and every allegation contained above as if fully set forth herein.

55.     Individual Defendants acted as controlling persons of Akari within the meaning of Section 20(a) of the Exchange Act as alleged herein. By virtue of their high-level positions and their ownership and contractual rights, participation in, and/or awareness of the Company's operations and intimate knowledge of the false financial statements filed by the Company with the SEC and disseminated to the investing public, Individual Defendants had the power to influence and control and did influence and control, directly or indirectly, the decision-making of the Company, including the content and dissemination of the various statements which Plaintiff contends are false and misleading. Individual Defendants were provided with or had unlimited access to copies of the Company's reports, press releases, public filings, and other statements alleged by Plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause the statements to be corrected.

56.     In particular, Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company and, therefore, had the power to control or influence the particular transactions giving rise to the securities violations as alleged herein, and exercised the same.

57.     As set forth above, Akari and Individual Defendants each violated Section 10(b) and Rule 10b-5 by their acts and omissions as alleged in this Complaint. By virtue of their position as controlling persons, Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act. As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and other members of the Class suffered damages in connection with their purchases of the Company's securities during the Class Period.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment, as follows:

(a)     Determining that this action is a proper class action under Rule 23 of the Federal Rules of Civil Procedure;

(b)     Awarding compensatory damages in favor of Plaintiff and the other Class members against all defendants, jointly and severally, for all damages sustained as a result of

Defendants' wrongdoing, in an amount to be proven at trial, including interest thereon;

(c)     Awarding Plaintiff and the Class their reasonable costs and expenses incurred in this action, including counsel fees and expert fees; and

(d)     Such other and further relief as the Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  May 12, 2017                          **GLANCY PRONGAY & MURRAY LLP**

By: *s/ Lesley F. Portnoy*
Lesley F. Portnoy (LP-1941)
122 East 42nd Street, Suite 2920
New York, New York 10168
Telephone: (212) 682-5340
Facsimile: (212) 884-0988
lportnoy@glancylaw.com

-and-

Lionel Z. Glancy
Robert V. Prongay
Casey E. Sadler
Charles H. Linehan
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160

*Attorneys for Plaintiff*

# GLANCY PRONGAY & MURRAY LLP

**SWORN CERTIFICATION OF PLAINTIFF**
**Akari Therapeutics, Plc Securities Litigation**

I, Derek Da ponte, certify that:

1. I have reviewed the Complaint and authorize its filing and/or the filing of a Lead Plaintiff motion on my behalf.

2. I did not purchase Akari Therapeutics, Plc, the security that is the subject of this action, at the direction of plaintiff's counsel or in order to participate in any private action arising under this title.

3. I am willing to serve as a representative party on behalf of a class and will testify at deposition and trial, if necessary.

4. My transactions in Akari Therapeutics, Plc during the Class Period set forth in the Complaint are attached in Exhibit A.

5. I have not served as a representative party on behalf of a class under this title during the last three years, except as follows:

6. I will not accept any payment for serving as a representative party, except to receive my pro rata share of any recovery or as ordered or approved by the court, including the award to a representative plaintiff of reasonable costs and expenses (including lost wages) directly relating to the representation of the class.

I declare under penalty of perjury that the foregoing are true and correct statements.

Date: May 12 2017
[REDACTED]

I am NOT a current or former employee of Akari Therapeutics, Plc
RETURN TO:
Glancy Prongay & Murray LLP
1925 Century Park East, Suite 2100
Los Angeles, CA 90067

**Derek Da Ponte's Transactions in**
**Akari Therapeutics, Plc (AKTX)**

| Date | Transaction Type | Quantity | Unit Price |
|------|------------------|----------|------------|
| 05/11/2017 | Bought | 40 | $11.7000 |